UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WENDY S. COOK a/k/a | ) |
| WENDY C. COOK, | ) |
| | )   07 C 1544 |
| Defendant and | ) |
| Counterplaintff, | ) |
| | ) |
| vs, | ) |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION, | ) |
| AS TRUSTEE, | ) |
| | ) |
| Counterdefendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on cross motions for summary judgment. Plaintiff U.S. Bank National Association ("U.S. Bank") moves for summary judgment in its favor. Defendant Wendy S. Cook a/k/a Wendy C. Cook ("Cook") also moves for summary judgment. For the following reasons, U.S. Bank's motion is granted and Cook's motion is denied.

## BACKGROUND

This is an action regarding a mortgage foreclosure. The court has jurisdiction on the basis of diversity of citizenship; U.S. Bank is citizen of Ohio, and Cook is a citizen

of Illinois. *See* 28 U.S.C. § 1332(a). Furthermore, the amount in controversy exceeds $75,000.00.

U.S. Bank filed suit against Cook to foreclose on a defaulted mortgage agreement.[1] In doing so, U.S. Bank asserts that it was assigned Cook's mortgage and claims all rights arising under the terms of the note and mortgage. Cook answered the complaint and filed a counterclaim alleging that her signature on the mortgage was forged and disclaiming knowledge of the series of transactions giving U.S. Bank an interest in the property. In response to Cook's counterclaim, U.S. Bank asserted ratification, equitable subrogation, conventional subrogation, and unjust enrichment as affirmative defenses.

The property in question is in Lake Forest, Illinois and was originally encumbered by a $550,000.00 mortgage lien held by Chase Home Finance, LLC ("Chase") as security for the loan. This original mortgage was executed by Peter Cook, Defendant Wendy Cook's husband, and Defendant Cook.

On November 22, 2005, Peter Cook refinanced the note and mortgage; he executed and delivered a note promising to pay New Century Mortgage Corporation ("New Century") the principal sum of $712,000.00. Peter Cook is deceased.

---

[1] The background section is derived from U.S. Bank's 56.1 statement of undisputed facts and statement of additional facts as well as Cook's 56.1 statement of undisputed facts.

New Century subsequently received a mortgage interest in the property at issue. Chicago Title and Trust Company was retained to perform the closing of the loan. On November 28, 2005, a disbursement-only settlement was held and the proceeds of the loan were distributed. Pursuant to the settlement statement, $554,651.93 of the proceeds were used to satisfy the Chase mortgage. Chase's lien on the property was subsequently paid off and released. The remaining proceeds of the settlement were disbursed to satisfy various consumer debts; in addition, cash proceeds were disbursed to a joint account held by Peter Cook and Defendant Cook.[2]

Mortgage Electronic Registration Systems, Inc. ("MERS") was an assignee of the mortgage securing the note and acted as a nominee for the holder and owner of the note. As evidence of the assignment from MERS to U.S. Bank, U.S. Bank identifies a Pooling and Service agreement[3] adducing proof of the assignment and its present interest in the property. U.S. Bank propounded William Haughton as a witness drawing upon his review of system files and notes to testify as to U.S. Bank's knowledge of the mortgage loan. Judy Faber, the Director of Records Management for Residential Funding

---

[2] $8,206.00 to pay a debt to AMEX; $16,659.00 to pay a debt to Chase; $29,123.00 to pay a debt to first USA Bank; $42,325.00 to pay a debt to Chase; $14,118.00 to pay a debt to Discover, and $40,982.97 in cash.

[3] The Pooling and Servicing Agreement contained on the Securities and Exchange website can be located at http:/www.sec.gov/Archives/edgar/data/1348931/000134893106000007/0001348931-06-000007.txt.

Company, LLC, acknowledged the existence of the MERS–U.S. Bank assignment. Faber concluded that U.S. Bank is the current owner of the note and mortgage.

According to the terms of the note, the first payment was due on January 1, 2006. Payments were rendered through June 2006. Following Peter Cook's death on April 13, 2006, Defendant Cook made two additional mortgage payments. At present, U.S. Bank contends that it paid real estate taxes on the property at issue totaling $21,182.23; it calculates the unpaid principal and interest on the note at $845,211.39. U.S. Bank requests a total award of $866,393.62, plus interest accruing at $154.88 per day from September 22, 2008, and attorney's fees and costs. To the extent that the proceeds of the property are insufficient to satisfy the amount due, U.S. Bank seeks a deficiency judgment against Cook.

**LEGAL STANDARD**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a

genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. Proc. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

When parties file cross motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. *M. Snower & Co. v. United States*, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

### I. Validity of the Refinanced Mortgage

A preliminary matter is whether Cook signed the November 22, 2005 mortgage. Cook asserts that the mortgage is invalid because she did not sign it. However, U.S.

Bank contends that the mortgage was validly executed by Cook. Grant Bryant, a Notary Public in Illinois, acknowledges that Cook signed the mortgage. Rebutting Bryant's testimony, Cook provides Diane Marsh, a handwriting expert who opines that the signature on the mortgage is inconsistent with Cook's signature; Marsh concludes the signature is a forgery. U.S. Bank offered as evidence the opinion of James Hayes, a handwriting expert who determined the signature was not forged.

U.S. Bank moves for summary judgment on the issue of Cook's forgery counterclaim. Under Illinois law, a notary's certificate of acknowledgment of a signatory can only be overcome by clear and convincing evidence and by disinterested witnesses. *See Witt v. Panek*, 97 N.E.2d 283, 285 (Ill. 1951). While Cook maintains that she did not sign the mortgage, U.S. Bank asserts that Bryant certified the signatures of the mortgage on November 22, 2005. Bryant acknowledged that he certified and signed the mortgage with his seal and signature. Furthermore, when he notarizes documents, he follows the same procedure: a person must sign the document in his presence before causing him to notarize it. He neither notarizes a document outside a signatory's presence nor deviates from his routine. Although he does not recall each specific time that he notarizes a signature, and particularly cannot recall Cook, he does follow a methodical process. "Only a rare individual can remember every person with

whom the individual has a brief encounter." *See Butler v. Encyclopedia Brittanica*, 41 F.3d 285, 295 (7th Cir. 1994).

Cook opposes U.S. Bank's argument with handwriting expert Diane Marsh, who reviewed the mortgage and related documents and concluded that Cook's signature was forged. U.S. Bank counters Marsh's testimony with James Hayes, also a handwriting expert, who found the exact opposite. Both experts are disinterested witnesses and reached inconsistent conclusions. In Illinois, a party does not establish forgery by clear and convincing evidence when two handwriting experts reach opposite results. *Witt*, 97 N.E.2d at 286. Since Marsh's findings are controverted by Hayes and there is no other evidence to substantiate the forgery claim, summary judgment is appropriate. Therefore, the mortgage was validly executed.

## II. Ownership Interest

Cook asserts that U.S. Bank failed to prove it is the real party of interest in the mortgage. Countering Cook's argument that it is not the true owner of the mortgage, U.S. Bank identifies the Pooling and Servicing Agreement ("PSA"). The PSA provides that Residential Asset Mortgage Products, Inc. ("RAMP") is the "Depositor," Residential Funding Corporation ("RFC") is the "Master Server," and U.S. Bank is the "Trustee." Section 2.01 of the PSA, reveals the following:

> The Depositor [RAMP], concurrently with the execution and delivery hereof, does hereby assign to the Trustee [U.S. Bank]

> without recourse all the right, title, and interest of the Depositor in and to (I) the Mortgage Loans,...

U.S. Bank contends that the assignment included Cook's note and mortgage; therefore, as trustee for the note and mortgage, it purports to be the real party in interest. Furthermore, Section 3.01 of the PSA provides that the "Master Servicer [RFC] shall service and administer the Mortgage Loans in accordance with the terms of this Agreement." Section 3.02(a) permits the Master Servicer to enter into subservice agreements in administering all or some of the mortgage loans. Cook perceives that she is entitled to summary judgment because U.S. Bank's witnesses that testify as to the validity of the PSA are unqualified. Cook lacks any countervailing evidence to create a genuine issue of material fact. Based on the agreement cited above by U.S. Bank, and Cook's failure to offer evidence to the contrary, U.S. Bank is the true owner of the property.

### III. Assignment of Mortgage

Next, Cook argues that there is no evidence establishing that U.S. Bank is the assignee of the mortgage. She maintains that neither Faber nor Haughton had sufficient roles in the transaction or information about the mortgage to verify the assignment. Cook perceives Haughton as unqualified because he does not keep the books, records, and documents related to the note and mortgage. Likewise, Cook discredits Faber as

a witness on the basis that she has never seen the note and mortgage and was never employed by U.S. Bank.

However, U.S. Bank contends that Faber does have personal knowledge on the issue of assignment. It asserts that as the Director of Records Management at RFC, Faber used an offsite vendor to service the mortgage. As part of her duties, she executes the endorsement of notes from RFC to new owners and maintained that she endorsed this particular note from RFC to U.S. Bank. Although Haughton had no involvement with the note until he reviewed the file, U.S. Bank claims that he knows the contents of the mortgage by virtue of his review of the file. Furthermore, he acknowledges that MERS was an assignee of the mortgage as nominee for U.S. Bank and that MERS assigned the mortgage to U.S. Bank. Finally, U.S. Bank asserts that the endorsements on the note itself indicate that New Century endorsed it to RFC and RFC subsequently endorsed it to U.S. Bank.

Such evidence, without anything affirmative to the contrary, does not pose an issue of factual dispute. Therefore, Cook's motion for summary judgment as it pertains to these issues is denied.

**IV. Equitable Relief**

In addition to its contention that it has a legal right in the property and is entitled to summary judgment, U.S. Bank supports its position by virtue of equitable theories

of recovery. First, it claims that it is entitled to summary judgment on the basis of equitable or conventional subrogation. Next, it argues that unjust enrichment prohibits Cook from retaining the benefits of the property without a mortgage. Finally, U.S. Bank asserts that Cook ratified the mortgage and is estopped from its denying its validity.

*A. Equitable and Conventional Subrogation*

U.S. Bank maintains that either equitable or conventional subrogation entitles it to the proceeds or possession of the property. Subrogation is an equitable theory allowing an individual who paid a debt for another to claim all inherited rights. *In re Pearce*, 236 B.R. 261, 264 (Bankr. S.D. Ill. 1999). Equitable subrogation is used to prevent the unjust enrichment by one party at another party's expense. *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 734 N.E.2d 493, 498 (Ill. App. Ct. 2000). Conventional subrogation evolves out of an express agreement. *In re Pearce*, 236 B.R. at 264. U.S. Bank asserts that Cook has stayed in the house and taken full advantage of the benefits of the refinanced note and mortgage without making payments, for over a year and a half. It purports that such one-sided benefit amounts to unjust enrichment.

U.S. Bank also avers that the agreement to pay Cook's consumer debts, including the Chase mortgage payoff entitles it to the same rights as the original creditor—Chase. To properly claim a right of conventional subrogation, a plaintiff must satisfy the

following requirements: (1) the subrogee paid the debt in full; (2) the subrogee paid the debt on behalf of a third party; (3) the subrogor possessed a right that it could enforce against a third party; and (4) the subrogee did not pay the debt as a volunteer. *Id.* at 264-65. Arguing that it satisfies these requirements, U.S. Bank first contends that it paid the Chase mortgage[4] in full. Next, Cook qualifies as the third party on whose behalf the debt was paid. Third, Chase initially held a mortgage lien it could enforce against Cook. Finally, it maintains that the evidence of the refinancing agreement proves that it was not acting merely as a volunteer.

Cook perceives that U.S. Bank is not entitled to equitable or conventional subrogation because it fails to establish that it has an interest in the property. Claiming that U.S. Bank cannot prove what it paid for the assignment, Cook argues that any judgment would be speculative. Having established that U.S. Bank is the legal owner of the mortgage, Cook's contentions are moot. Since it is undisputed that she lives in the property and enjoys the benefits of the mortgage, Cook fails to raise any factual dispute that would preclude summary judgment.

B. *Unjust Enrichment*

By permitting Cook to retain the benefits of the property without a mortgage, U.S. Bank claims that she would be unjustly enriched. A person who is unjustly

---

[4]New Century is the lender that refinanced the original Chase mortgage. By virtue of the assignment, U.S. Bank asserts that it stands in the same shoes as New Century.

enriched at another person's expense is required to pay restitution to the other. *Partipilo v. Hallman*, 510 N.E.2d 8, 11 (Ill. App. Ct. 1987). Asserting its position, U.S. Bank reiterates that it paid the prior mortgage, provided tax advances, and that any excess money from the November 22, 2005, loan was used to satisfy Cook's consumer debts or was a cash disbursement.

Again, Cook relies on the same defenses she asserts above. She fails to raise any facts that contradict U.S. Bank's unjust enrichment claim. It is undisputed that she took the refinancing paid the original loan and offered an opportunity to pay off credit card debt. Such facts, without anything to the contrary, entitle U.S. Bank to summary judgment on this claim.

*C. Ratification and Estoppel*

U.S. Bank contends that it is entitled to relief on the basis that Cook ratified the mortgage by accepting the benefits of the loan proceeds secured by the mortgage. Acquiescence or a failure to repudiate on the part of a person who receives the benefits will be considered ratification. *Mateyaka v. Schroeder*, 504 N.E.2d 1289, 1297 (Ill. App. Ct. 1987). It occurs when the person receiving the benefit acts inconsistently with nonaffirmation of the transaction. *Id.* U.S. Bank's position is that regardless of whether Cook had knowledge of the mortgage before her husband's death, once she became aware of it she did nothing to repudiate the benefits of the note and mortgage. Rather,

she continues to reside at the property. Furthermore, she has failed to return any of the money used to pay off consumer debts and cash disbursements. It is undisputed that following her husband's death, she made only two payments toward the mortgage.

U.S. Bank also claims that Cook is estopped from denying the validity of the mortgage because she accepted all the benefits of the mortgage. Under Illinois law, when a party accepts the benefits of an agreement, she is estopped from denying its existence or performing obligations under it. *See Grot v. First Bank of Schaumburg*, 684 N.E.2d 1016, 1020 (Ill. App. Ct. 1997).

Cook raises the defense of unclean hands to relieve herself of U.S. Bank's equitable claims and avers that the same defenses she may have had against New Century are available against U.S. Bank. *See Inland Real Estate Corp. v. Oak Park Trust & Sav. Bank*, 469 N.E.2d 204, 209 (Ill. App. Ct. 1983). In her response, Cook accuses Chicago Title and Trust[5] of improperly validating the original mortgage with New Century because it filed a false affidavit stating that it handled the loan document signing and delivered copies of all documents to each borrower. According to Cook, since New Century's act of selecting Chicago Title and Trust as its agent for the transaction and Chicago Title and Trust acted improperly, New Century's shortcoming

---

[5]Chicago Title and Trust was retained by New Century to perform the closing of the loan.

is imputed to U.S. Bank. Therefore, Cook asserts that Chicago Title and Trust's perceived perpetration of fraud entitles her to the defense of unclean hands.

Without producing facts to the contrary regarding whether she received the benefits associated with the refinanced mortgage, Cook cannot overcome a conclusion that she ratified the mortgage. Likewise, by living in the home for more than a year and a half without making a payment, Cook is denied from questioning the validity of the mortgage.

## CONCLUSION

Based on the foregoing, U.S. Bank's motion for summary judgment is granted and Cook's motion is denied.

_____
Charles P. Kocoras
United States District Judge

Dated:    January 6, 2009